JUDGE BERMAN   **11 CIV 1891**

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

ARTHUR L. CAHOON; GLENGARRIFF VENTURES, LLC; ANTONIO R. SANCHEZ, JR., individually and as Trustee of THE SANCHEZ SPOUSAL TRUST; ANGELINA VENTURES, LLC; THE GEORGE M. SANCHEZ OIL & GAS TRUST and ARS, JR., GMS NON-EXEMPT REMAINDER TRUST, KELSEY V. STEWART OIL & GAS TRUST, and RICHARD A. STEWARD OIL & GAS TRUST as beneficiaries of THE GEORGE M. SANCHEZ OIL & GAS TRUST; MEDINA VENTURES, LLC; THE SANCHEZ MARITIAL TRUST and ARS, JR., GMS NON-EXEMPT REMAINDER TRUST, EKLSEY V. STEWART OIL & GAS TRUST, AND RICHARD A. STEWART OIL & GAS TRUST as beneficiaries of THE SANCHEZ MARITIAL TRUST; RED VENTURES, LLC; THE SANCHEZ SPOUSAL TRUST; and PECOS VENTURES, LLC,

Plaintiffs,

v.

BAYERISCHE HYPO-UND VEREINSBANK AG; BAYERISCHE HYPO-UND VEREINSBANK AG NEW YORK BRANCH; UNICREDIT U.S. FINANCE INC. (f/k/a HVB U.S. FINANCE INC. and HVB STRUCTURED FINANCE INC.); and HVB RISK MANAGEMENT PRODUCTS, INC.,

Defendants.

-------------------------------------------------------------------x

COMPLAINT



Case No.

[ECF CASE]

(JURY TRIAL DEMANDED)

RECEIVED
MAR 18 2011
U.S.D.C. S.D.N.Y.
CASHIERS

1

Plaintiffs, on their own behalf and on behalf of their respective limited liability companies, bring this action against Defendants Bayerische Hypo-und Vereinsbank AG; Bayerische Hypo-und Vereinsbank AG New York Branch; Unicredit U.S. Finance Inc. (f/k/a HVB U.S. Finance Inc. and HVB Structured Finance Inc.); and HVB Risk Management Products, Inc. (collectively "HVB") and allege as follows:

## I.   INTRODUCTION

1.      Plaintiffs bring this action against HVB to recover damages, including but not limited to so called guaranteed payment fees, net interest expense charges, and trading losses (referred to collectively herein as "loan fees") and asset management fees paid to HVB and Presidio Growth, LLC and Presidio Advisory Services, LLC (collectively "Presidio") for loans purportedly made by HVB in connection with an investment program called Strategic Investment Fund ("SIF"), supposedly managed by Presidio, in which each of the Plaintiffs was a passive investor, member and 90% owner.   Unbeknownst to Plaintiffs, no loans ever existed and no loan proceeds were ever under management.1

2.      In fact, a conspiracy (the "conspiracy") existed between HVB and Presidio to fraudulently charge illegitimate loan fees and asset management fees in connection with SIF for loans that did not exist.   HVB and Presidio accomplished the illegal purpose of their conspiracy by drafting loan agreements and other documents that made it appear to Plaintiffs that a loan from HVB existed and that it was an integral part of the SIF investment program and that the proceeds of the loan were under management by Presidio in an account at HVB when, in truth, there never was a loan.

---

[1] Plaintiffs participated in separate SIFs, but join together in this lawsuit in the interests of judicial economy.

3.      HVB and Presidio paid themselves loan fees and management fees for a loan that did not exist, which fees they knew they were not entitled to receive, out of money belonging to Plaintiffs, entrusted to them by Plaintiffs, on deposit in accounts at HVB for the benefit of Plaintiffs, controlled by HVB, over which HVB exercised discretionary authority.

4.      The actions and omissions by HVB and Presidio, as alleged herein, constitute fraud and conspiracy to commit fraud, aiding and abetting fraud, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, breach of contract and of the duty of good faith and fair dealing and fraudulent concealment, for which HVB is jointly and severally liable, and warrants imposing punitive damages against HVB.

## II.      FACTUAL ALLEGATIONS

5.      The Strategic Investment Fund (SIF) was marketed and represented to Plaintiffs by Presidio in a "Confidential Memorandum" as a series of funds, each fund consisting of an investment pool, which "seeks to provide investors with a high total return." [2]  Presidio was the manager of each fund.  David Amir Makov, John M. Larson and Robert A. Pfaff were the principals of Presidio.

6.      Presidio represented to Plaintiffs that the use of leverage, i.e., borrowed funds, was an integral part of the investment plan.

7.      Presidio directed Plaintiffs to obtain loans from HVB, consisting of a stated principal loan amount and a premium loan amount.

8.      In order to induce Plaintiffs to repose trust and confidence in HVB and take out a loan with HVB—a loan which, unbeknownst to Plaintiffs did not exist—and, ultimately, to defraud Plaintiffs into paying loan fees and management fees to HVB and Presidio, which HVB

---

[2] Strategic Investment Fund ("SIF") later came to be known as Bond Linked Issue Premium Structure ("BLIPS").

and Presidio were not entitled to receive, HVB and Presidio represented to Plaintiffs that HVB

had no involvement in the establishment, promotion or marketing of the SIF investment

program, that HVB operated at arm's length in relation to Presidio and Plaintiffs in connection

with the SIF investment program and that a loan from HVB to Plaintiffs in connection with SIF

would be and was in the ordinary course of accepted banking practices.  These representations

and omissions of fact regarding HVB's role and involvement in connection with SIF were false

and fraudulent. HVB was heavily involved in the establishment, promotion and marketing of the

SIF investment program, did not operate at arm's length relative to Presidio and the respective

loans that HVB purported to make to the respective Plaintiffs were fraudulent and not in the

ordinary course of accepted banking practices because, among other reasons, no loan existed.

       9.       HVB and Presidio conspired and agreed before and after Plaintiffs invested in

any SIFs, that under no circumstances would HVB make any loan in connection with SIF, but

that HVB and Presidio would nonetheless represent to Plaintiffs and would draft Credit

Agreements, Assignment and Assumption Agreements, loan documents and other documents in

connection with SIF to make it appear to Plaintiffs that HVB would and did make loans in

connection with the SIFs, that the purported loan proceeds would be deposited into accounts at

HVB in the name of Plaintiffs' respective LLCs and then transferred into a second account at

HVB in the name of Plaintiffs' respective SIFs, where the purported loan proceeds would be and

were available to be managed and invested by Presidio, pursuant to the SIF investment plan.

      10.      The illegal purpose of the conspiracy was to deceive Plaintiffs into believing

that a real loan had been made so that, upon withdrawal from the SIF, Plaintiffs would be

induced to pay HVB and Presidio's loan fees and management fees, even though there was no

loan and HVB and Presidio were not entitled to such fees.

11.     Plaintiffs invested in SIF in reliance on Presidio's representations that they would manage the loan proceeds for the purpose of making a profit. Plaintiffs took out loans from HVB in connection with SIF in reliance on the representations of HVB that it was not involved in the establishment, promotion and marketing of the SIF investment program, that it operated at arm's length relative to Presidio and Plaintiffs, that the loan existed and was made in the ordinary course of accepted banking practices.

12.     Plaintiffs satisfied all of the terms and conditions required by HVB and Presidio in order to participate in SIF and obtain what they thought were real loans. Among other things, Plaintiffs took the following steps, as directed by HVB and Presidio: Presidio assisted each individual Plaintiff to create an LLC, of which each respective Plaintiff was the sole owner; Plaintiffs opened accounts at HVB in the names of their respective LLCs, over which LLC accounts HVB exercised control and discretionary authority; Plaintiffs deposited collateral into their respective LLC accounts, to be used as security for the purported loan; Plaintiffs signed respective Credit Agreements and other agreements with HVB for a purported loan consisting of a stated principal loan amount and a premium loan amount; Plaintiffs agreed to pay loan fees associated with the purported loan and agreed to pay asset management fees to Presidio for purportedly managing the loan proceeds.

13.     Plaintiffs entered into Customer Agreements with HVB in the names of their LLCs from August 1999 to October 1999.

14.     HVB assumed dominion, control and discretionary authority over Plaintiffs' respective LLC accounts.

15.     Presidio opened accounts at HVB in the name of the respective SIFs. HVB assumed dominion, control and discretionary authority over the SIF accounts.

5

16.     Approximately two weeks after each of the Plaintiffs executed the Credit Agreement, HVB prepared an Assignment and Assumption Agreement ("Assignment Agreement") for each of the Plaintiffs to sign. This agreement assigned the respective Plaintiffs' rights in the Credit Agreement to a respective Strategic Investment Fund, which was purportedly managed by Presidio, but under the control of HVB.

17.     HVB represented the following to Plaintiffs: that HVB provided a loan to Plaintiffs, consisting of a stated principal loan amount and a premium loan; that HVB deposited the loan proceeds into Plaintiffs' respective LLC accounts; that HVB immediately transferred the loan proceeds into the respective SIF accounts were the proceeds were available to be managed by Presidio. These representations by HVB were false and fraudulent. HVB never provided a loan to any of the Plaintiffs in connection with SIF and HVB never made any loan proceeds available in any SIF account for management by Presidio.

18.     HVB's managers and directors, including but not limited to Domenick DeGiorgio, conspired and agreed with Presidio principals David Amir Makov, John Larson, and Robert Pfaff that none of the loan proceeds could be at risk at any point in time, and concealed this conspiracy and agreement from Plaintiffs.

19.     Plaintiffs were deceived by misrepresentations by HVB and Presidio in the Credit Agreement, Assignment and Assumption Agreement and other documents that HVB would and did make a real loan, the proceeds of which would be and were managed by Presidio and that HVB and Presidio were entitled to be paid their purported loan fees and management fees.

20.     In Sections 1.01 and 2.01 of the respective Credit Agreements, HVB agreed to make loans to Plaintiffs, consisting of a principal loan amount and a premium loan amount.

6

These representations were false because there were actually no loan funds made available to Plaintiffs.

21.     In the Assignment Agreement, HVB agreed to assign all rights and warranties granted to Plaintiffs under the Credit Agreement to a Strategic Investment Fund, which was purportedly managed by Presidio.

22.     HVB made material misrepresentations in the Assignment Agreement because no bona fide loan proceeds actually existed, and, as such, none could be assigned to Presidio.

23.     In Section 7 of the Assignment Agreement, HVB warranted that the Credit Agreement and related documents, including the Note, the Master Agreements and each of the other Assigned Documents, would continue in full force and effect and warranted that the credit agreement was ratified and confirmed in all respects.  These representations were false and repeated and reaffirmed the representations contained in the Credit Agreement, both of which were fraudulent.

24.     HVB misrepresented that a loan in connection with SIF existed in representations to that effect in opinion letters to Plaintiffs' attorneys at Sidley Austin and Plaintiffs' accountants at KPMG.  The Sidley Austin and KPMG opinion letters letter, which were subsequently sent to Plaintiffs, were written in reliance upon HVB's representations that the loan principal and premium amounts existed. These representations were false.

25.     Plaintiffs, as investors in SIF, were 90% owners and members of the SIF, but had no right or power to take part in the management or control of the fund.  Each SIF was given a unique first name.

26.     Plaintiffs, as Class A members of the SIF, were permitted to withdraw from the SIF after 60 days.

27.     The expenses of any borrowing, plus management fees of the SIF were payable upon Plaintiffs' withdrawal from their respective SIFs.

28.     Plaintiffs withdrew from their respective SIFs on or about day 60. After Plaintiffs withdrew from their respective SIFs, HVB and Presidio paid themselves loan fees and management fees based on the loans and loan amounts that HVB and Presidio falsely represented to Plaintiffs were loaned to Plaintiffs and which they falsely claimed were under management by Presidio while Plaintiffs were enrolled in their respective SIFs.  HVB and Presidio were not entitled to these fees. HVB never made any loans to Plaintiffs in connection with SIF and there were never any loan proceeds under management by Presidio.

29.     HVB paid itself and Presidio the alleged loan fees and management fees by withdrawing the money that Plaintiffs had deposited with HVB as collateral for the HVB loan. HVB and Presidio were not entitled to payment of these fees because no loans were ever made by HVB and no loan funds were ever under management by Presidio.  Moreover, the withdrawal by HVB from Plaintiffs' accounts at HVB to pay these fees was a wrongful exercise and abuse by HVB of its discretionary authority, dominion and control over Plaintiffs' accounts at HVB.

30.     At the time HVB and Presidio paid themselves these loan fees and management fees, Plaintiffs believed that a loan existed and that HVB and Presidio were entitled to receive this payment.  HVB and Presidio knew, but wrongfully concealed from Plaintiffs that they were not entitled to these fees.

31.     Plaintiffs were damaged as a proximate result of the wrongful acts and fraudulent concealment of HVB and the wrongful acts and fraudulent concealment of Deutsch Bank's co-conspirators, Presidio Growth, LLC and Presidio Advisory Services, LLC

8

(collectively "Presidio"), which wrongful acts and fraudulent concealment were committed in furtherance of the conspiracy, for which damages HVB is jointly and severally liable.

32.     Attached hereto as Exhibit A is a spreadsheet showing the names of each of the Plaintiffs (Column A); the name of their respective LLCs (Column B); the name of their respective Strategic Investment Fund (SIF) (Column C); the amount of loan collateral each Plaintiff deposited (Column D); the purported stated principal loan amount (Column E), purported premium loan amount (Column F) and purported total loan amount of the purported HVB loan (Column G); the HVB loan fees paid by the respective Plaintiffs for the purported loan (Column H); the management fees paid by the respective Plaintiffs for purported loan proceeds under management by Presidio (Column I); and the damages incurred by the respective Plaintiffs, consisting of the total fees paid to HVB and Presidio for loans that did not exist (Column J).

33.     Plaintiffs entered into Credits Agreements with HVB. In Sections 1.01 and 2.01 of the respective Credit Agreements, HVB purported to agree to make loans to Plaintiffs for a combined total amount of $189,200,000 (Exhibit A, Column G), consisting of a combined total principal amount of $118,200,000 (Exhibit A, Column E) and a combined total premium amount of $71,000,000. (Exhibit A, Column F). These representations were false because there were actually no loan funds made available to Plaintiffs.

34.     It was an object of the conspiracy for HVB and Presidio to obtain control of funds equivalent to 7% of the falsified loan premium amount. In this case, the combined total of purported HVB loan premium amounts was $71,000,000. (Exhibit A, Column F). Under the conspiratorial agreement, the investment solicited and requested to be deposited in Plaintiffs' respective accounts at HVB was 7% of the total purported $71,000,000 loan premium, or

$4,970,000. (Exhibit A, Columns D and F). As a condition of the investment, Plaintiffs were required to deposit, and Plaintiffs did deposit $4,970,000 in a discretionary account under the control of HVB. (Exhibit A, Column D).

35.     As part of the conspiracy, HVB and Presidio agreed between themselves to wrongfully charge "fees" based on a percentage of the combined purported $71,000,000 loan premiums to Plaintiffs. The conspiratorial agreement between Presidio and HVB was that the total fees charged would add up to 484 basis points or 4.84% of the combined purported loan premiums.  The co-conspirators agreed in advance to divide the spoils of their conspiracy among themselves as follows:

| | |
|---|---:|
| Bank Fees [HVB      ] | 125 |
| Mgmt Fees [Presidio] | 275 |
| Guaranteed Pymt. | 8 |
| Net Int. Exp.   [HVB] | 6 |
| Trading Loss   [HVB | 70 |

36.     The fees charged by HVB and Presidio were purportedly for the issuance and management of a premium loan, but in reality, the fees charged bore no relation to the purported loan, which did not exist.

37.     Pursuant to the conspiratorial agreement, HVB received 125 basis points in fees, 8 basis points in guaranteed payment, 6 basis points in net initial expenditures, and 70 basis points in trading losses for a total of 209 basis points against the nonexistent loan premiums. Presidio also received fees of 275 basis points against the nonexistent loan premiums.   The co-conspirators, Presidio and HVB with a total of 484 basis points against the nonexistent loan premiums from the investors accounts at HVB.  The following amounts were withdrawn at the discretion of HVB from Plaintiffs accounts at HVB:

a. Arthur L. Cahoon's entity Glengarriff Ventures, LLC's loan premium was $52,000,000. HVB withdrew $1,086,800 which was paid to HVB and $907,500 which was paid to Presidio, for a total of $1,994,300 (Exhibit A, Row a);

b. Antonio R. Sanchez Jr.'s entity Angelina Ventures, LLC's loan premium was $10,000,000. HVB withdrew $209,000 which was paid to HVB and $275,000 which was paid to Presidio, for a total of $484,000 (Exhibit A, Row b);

c. George M. Sanchez Oil & Gas Trust's entity Medina Ventures, LLC's loan premium was $2,000,000. HVB withdrew $41,800 which was paid to HVB and $55,000 which was paid to Presidio, for a total of $96,800 (Exhibit A, Row c);

d. Sanchez Marital Trust's entity Red Ventures, LLC's loan premium was $5,000,000. HVB withdrew $104,500 which was paid to HVB and $137,500 which was paid to Presidio, for a total of $242,000 (Exhibit A, Row d); and

e. Sanchez Spousal Trust's entity Pecos Ventures, LLC's loan premium was $2,000,000. HVB withdrew $41,800 which was paid to HVB and $55,000 which was paid to Presidio, for a total of $96,800 (Exhibit A, Row e).

38.     Pursuant to the conspiratorial agreement, HVB wrongfully diverted 125 basis points in fees, 8 basis points in guaranteed payment, 6 basis points in net initial expenditures, and 70 basis points in trading losses for a total of 209 basis points calculated as a percentage of the combined nonexistent loan premiums in this case of $71,000,000, or $1,483,900. (Exhibit A, Columns F and I).

39.      Pursuant to the conspiratorial agreement, HVB also paid Presidio 275 basis points against the nonexistent loan premium of $71000,000, wrongfully diverting $1,952,500 to Presidio.  (Exhibit A, Columns F and H).

40.      Pursuant to the conspiratorial agreement, HVB wrongfully diverted $3,436,400 from Plaintiffs respective accounts at HVB, which fees were related to purported loans that did not exist. (Exhibit A, Column J).

41.      HVB's acts and omissions, as alleged herein, were performed with oppression, fraud and malice. HVB's actions constituted egregious conduct directed at Plaintiffs. Moreover, HVB's actions were part of a pattern directed at the public generally, and ultimately ensnared large numbers of victims. HVB's actions were taken in bad faith and were maliciously motivated. As a consequence, Plaintiffs also requests punitive damages.

## Plaintiffs' claims were tolled during the pendency of class action lawsuits against HVB

42.      On January 28, 2005, a class action Complaint was filed by Thomas Becnel, lead plaintiff, on behalf of others similarly situated against HVB, Presidio, KPMG, Sidley Austin, and others in a class action lawsuit arising from this same investment program. *Plaintiffs v. KPMG, LLP, et al.,* Case No. 05-CV-06015-RTD (U.S. District Court of the Western District of Arkansas) (removed from Circuit Court of Clark County for the State of Arkansas, Case No. CV-2005-18) ("*Plaintiffs v. KPMG*").  Class certification in *Plaintiffs v. KPMG* was denied on August 9, 2005, and the case was dismissed without prejudice on September 12, 2005. Plaintiffs' claims against HVB were tolled from January 28, 2005, until September 12, 2005, during the pendency of *Plaintiffs v. KPMG*.[3]

---

[3]  In *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), the Supreme Court held that the statute of limitations is tolled from the filing of the class action complaint until the class is either certified or denied.  This case was affirmed by *In Re: Worldcom Securities Litigation*, 496 F.2d 245 (2d Cir. 2007).

43.     On September 2, 2005, a new class action complaint involving the same investment program was filed against HVB and others in the case of *Kottler v. Deutsche Bank and HVB, et al.* Case No. 05 Civ. 7773 (U.S. District Court for the Southern District of New York) ("Kottler v. HVB").  Class certification was denied on March 29, 2010.

44.     Plaintiffs' claims against HVB were also tolled from September 2, 2005, until March 29, 2010, during the pendency of the *Kottler v. Deutsche Bank and HVB* class action complaint.

### III.     JURISDICTION AND VENUE

45.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332(a) because Plaintiffs' claims exceed $75,000, the parties entered into a Credit Agreement and an Assignment and Assumption Agreement agreeing to submit to the jurisdiction of this court, and the residences of Plaintiffs are diverse from Defendant NatWest.

46.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because the parties entered into a Credit Agreement and an Assignment and Assumption Agreement agreeing to submit to the venue of this court and because a substantial part of the events giving rise to the claims asserted occurred in this district.

### IV.     PARTIES

47.     Plaintiff Arthur L. Cahoon is a resident of the State of Florida.

48.     Plaintiff Glengarriff Ventures, LLC is a limited liability company whose sole member is Arthur L. Cahoon.  Gengariff Ventures, LLC is organized under the laws of the State of Delaware with its principal place of business in the State of Florida.  Gengarriff Ventures, LLC invested in Washington Strategic Investment Fund, LLC.

49.     Plaintiff Antonio R. Sanchez Jr. is a citizen of the State of Texas.

13

50.     Plaintiff Angelina Ventures, LLC is a limited liability company whose sole member is Antonio R. Sanchez Jr.  Angelina Ventures, LLC is organized under the State of Delaware with its principal place of business in the State of Texas.

51.     Plaintiff George M. Sanchez Oil & Gas Trust is a citizen of the State of Texas. The George M. Sanchez Oil & Gas Trust is dissolved. The beneficiaries of the George M. Sanchez Oil & Gas Trust are ARS, Jr. GMS Non-Exempt Remainder Trust, Kelsey V. Stewart Oil & Gas Trust and the Richard A. Stewart Oil & Gas Trust.

52.     Plaintiff Medina Ventures, LLC is a limited liability company whose sole member is George M. Sanchez Oil & Gas.  Medina Ventures, LLC is organized under the State of Delaware with its principal place of business in the State of Texas.

53.     Plaintiff Sanchez Marital Trust is a citizen of the State of Texas.  The Sanchez Marital Trust is dissolved. The beneficiaries of The Sanchez Marital Trust are ARS, Jr. GMS Non-Exempt Remainder Trust, Kelsey V. Stewart Oil & Gas Trust and the Richard A. Stewart Oil & Gas Trust.

54.     Plaintiff Red Ventures, LLC is a limited liability company whose sole member is Sanchez Marital Trust.  Red Ventures, LLC is organized under the State of Delaware with its principal place of business in the State of Texas.

55.     Plaintiff Sanchez Spousal Trust is a citizen of the State of Texas.  Antonio R. Sanchez Jr. is the trustee of the Sanchez Spousal Trust.

56.     Plaintiff Pecos Ventures, LLC is a limited liability company whose sole member is Sanchez Spousal Trust.  Pecos Ventures, LLC is organized under the State of Delaware with its principal place of business in the State of Texas.

57.        Antonio R. Sanchez Jr., individually and as trustee of the Sanchez Marital Trust and the Sanchez Spousal Trust, Angelina Ventures, LLC, George M. Sanchez Oil & Gas Trust, Medina Ventures, LLC, Sanchez Marital Trust, Red Ventures, LLC, Sanchez Spousal Trust and Pecos Ventures, LLC are referred to collectively herein as the "Sanchez Plaintiffs." The Sanchez Plaintiffs invested in Thunderbolt Strategic Investment Fund LLC.

58.        Bayerische Hypo-und Vereinsbank, AG, is a German-based bank and financial institution that operated in the United States through a branch located at 150 East 42nd Street, New York, New York.  Bayerische Hypo-und Vereinsbank, AG, was and is the parent to various subsidiaries, including Unicredit U.S. Finance, Inc. (formerly known as HVB U.S. Finance, Inc. and as HVB Structured Finance, Inc.) and Bayerische Hypo-und Vereinsbank, AG—New York Branch.

59.        Defendant Bayerische Hypo-und Vereinsbank, AG—New York Branch is registered with the New York Department of Banking with employees and offices transacting business in New York at 150 East 42nd Street, New York, New York 10017.  Defendant HVB-NY is a branch of Bayerische Hypo-und Vereinsbank AG.

60.        Defendant HVB Unicredit US Finance, Inc., is f/k/a HVB U.S. Finance, Inc. and HVB Structured Finance, Inc., a Delaware corporation having a principal place of business at 150 E. 42nd Street, New York, New York 10017.  Defendant HVB Unicredit US Finance, Inc. is a subsidiary of its parent company, Bayerische Hypo-und Vereinsbank, AG.

61.        Defendants Bayerische Hypo-und Vereinsbank, AG, Bayerische Hypo-und Vereinsbank, AG—New York Branch, HVB U.S. Finance, Inc., HVB U.S. Finance, Inc. and HVB Structured Finance, Inc. are referred to herein collectively as "HVB."

62.     In committing the acts and omissions complained of herein, each of the Defendants was acting as the agent of the remaining defendants.

## V.     CLAIMS FOR RELIEF

### First Claim for Relief: Fraud and Conspiracy to Commit Fraud

63.     Plaintiffs repeat and reallege each of the allegations set forth in the foregoing paragraphs as though incorporated fully herein.

64.     A conspiracy existed between HVB and Presidio to fraudulently charge illegitimate loan fees and asset management fees in connection with SIF for loans that did not exist.

65.     HVB committed overt acts in furtherance of the conspiracy by concealing from Plaintiffs that HVB entered into an agreement with Presidio never to loan money in connection with SIF and by drafting loan agreements and other documents that made it appear to Plaintiffs that a loan from HVB existed and that it was an integral part of the SIF investment program and that the proceeds of the loan were under management by Presidio in an account at HVB when, in fact, there never was a loan.

66.     Had Plaintiffs known of the material adverse information not disclosed by HVB, or had they been made aware of the truth behind HVB's material misstatements, Plaintiffs would not have entered into the HVB loan or the investment program.

67.     Plaintiffs were damaged by the conspiracy to defraud between HVB and Presidio in that they paid themselves loan fees and management fees for a loan that did not exist, which fees they knew they were not entitled to receive.

68.     HVB is jointly and severally liable for all of the damages caused by the conspiracy between HVB and Presidio.

16

69.     As a direct and proximate cause of HVB's fraudulent conduct described herein, each of the Plaintiffs suffered damages in the combined amount of $3,436.400 plus interest, costs and attorneys' fees.

70.     HVB's fraudulent and conspiratorial conduct, as alleged herein, warrants the imposition of punitive damages.

## Second Claim for Relief: Aiding and Abetting Fraud

71.     Plaintiffs repeat and reallege each of the allegations set forth in the foregoing paragraphs as though incorporated fully herein.

72.     Presidio defrauded Plaintiffs by representing to Plaintiffs that it would manage the proceeds of a loan from HVB as part of SIF and by representing that Presidio was entitled to a fee for purportedly managing purported loan proceeds, when, in fact, there never was a loan and Presidio was not entitled to any loan management fee.

73.     HVB aided and abetted Presidio to defraud Plaintiffs by assisting Presidio to draft documents which falsely represented to plaintiffs that there was a loan and that Presidio would manage loan proceeds and by assisting Presidio to conceal from plaintiffs the truth that there was no loan. HVB further assisted Presidio to defraud plaintiffs by withdrawing funds belonging to plaintiffs in an account under the control of HVB and paying Presidio for asset management fees with the withdrawn funds, knowing that Presidio was not entitled to receive such fees because there were no assets under management.

74.     HVB is jointly and severally liable for all damages caused Presidio's fraudulent conduct, as alleged herein.

75.      As a direct and proximate cause of HVB's acts of aiding and abetting Presidio's fraudulent conduct described herein, Plaintiffs suffered combined damages of $3,436,400, plus interest, costs and attorneys' fees.

76.      HVB's actions and omissions in aiding Presidio's fraudulent conduct, as alleged herein, warrants the imposition of punitive damages.

### Third Claim for Relief: Breach of Fiduciary Duty

77.      Plaintiffs repeat and reallege each of the allegations set forth in the foregoing paragraphs as though incorporated fully herein.

78.      A fiduciary relationship existed between HVB and Plaintiffs.  HVB controlled Plaintiffs' deposit of collateral in the combined amount of $4,970,000 (Exhibit A, Column D), which was deposited into a discretionary account under HVB's sole control.  HVB had special knowledge regarding Presidio and the SIF investment program and was heavily involved in the establishment, promotion and marketing of the SIF investment program.  HVB did not operate at arm's length relative to Presidio. The loan that HVB purported to make to Plaintiffs was not in the ordinary course of accepted banking practices.

79.      Because the account was a discretionary account and HVB possessed superior knowledge regarding transactions related to the account,  HVB had a fiduciary duty  to act toward Plaintiffs to act with loyalty and good faith and to ensure that all charges related to the account were legitimate.

80.      HVB had a duty to disclose to Plaintiffs its knowledge regarding the loan and the fact that the loan did not exist and a duty to disclose its relationship with Presidio, including its agreement with Presidio that HVB would never make a loan in connection with SIF.

18

81.     HVB owed a fiduciary duty to Plaintiffs to execute the Credit Agreement, Assignment and Assumption Agreement, and the ISDA Swap Agreement in good faith and in accordance with its terms.

82.     HVB breached their fiduciary duty by making withdraws from the account to pay HVB and Presidio for a loan transaction which did not exist, and used the loan accounts to conceal that the loan did not exist.

83.     HVB maintained the Plaintiffs accounts, which were managed under the discretion of HVB, in such a way as to conceal and for the purpose of concealing that the loan principal and premium referenced in the HVB Credit Agreement did not exist.  Based upon information and belief, the Plaintiffs accounts remained open for several months, after which they were closed by HVB pursuant to and in furtherance of the conspiratorial agreement.  HVB owed a fiduciary duty related to the discretionary management of these accounts and arising out of the Customer Agreement, Credit Agreement and the ISDA Swap Agreement during the time that the accounts were open, which imposed a duty upon HVB not to make any misrepresentations in any of said documents in any material respect.  This fiduciary duty was ongoing during the time that Plaintiffs' accounts remained open at HVB.

84.     HVB managed Plaintiffs' account and acted in its own self-interest and concealed these and other facts from Plaintiffs, in breach of its fiduciary duties to Plaintiffs.

85.     As a direct and proximate cause of HVB's breach of fiduciary duty described herein, Plaintiffs suffered combined damages in the amount of $3,436,400, plus interest, costs and attorneys' fees.

86.     HVB's acts and omissions in breach of its fiduciary duties, as alleged herein, warrants the imposition of punitive damages.

**Fourth Claim for Relief: Aiding and Abetting Breach of Fiduciary Duty**

87.     Plaintiffs repeat and reallege each of the allegations set forth in the foregoing paragraphs as though incorporated fully herein.

88.     Co-conspirator Presidio was a registered investment advisor under the Investment Advisors Act of 1940, and, therefore, had a fiduciary duty to Plaintiffs of utmost good faith and full and fair disclosure of all material facts, as well as the affirmative obligation to Plaintiffs to employ reasonable care to avoid misleading Plaintiffs.

89.     HVB knew that a fiduciary relationship existed between Presidio and Plaintiffs. HVB approved the Strategic Investment Fund LLC agreements, which were attached to the HVB Assignment and Assumption Agreement. Under the terms of the Strategic Investment Fund LLC Agreements, Plaintiffs collectively owned a 90% interest in the profits as a passive investor. Presidio owned a 10% interest in the profits as the active manager of the Fund.

90.     HVB aided and abetted Presidio to breach its fiduciary duty to Plaintiffs by concealing from Plaintiffs that HVB and Presidio had agreed before Plaintiffs entered into the Strategic Investment Fund that under no circumstances would any part of the purported HVB loans ever be managed by Presidio or put at risk, regardless of what the written agreements provide.

91.     HVB directly and indirectly controlled and had discretionary authority over the Plaintiffs accounts at HVB. HVB aided and abetted Presidio's breach of fiduciary duty to Plaintiffs by conspiring and agreeing to draft a falsified Credit Agreement and Assignment and Assumption Agreement, which formed the basis of the withdrawal of $3,436,400 from Plaintiffs'

20

accounts, which was related to a loan which did not exist, among other documents that contained similar false representations.

92.     The misrepresentations and omissions in the Credit Agreement and Assignment and Assumption Agreement, formed the basis for the wrongful withdrawal by HVB of $3,436,400 for loan and management fees for a loan that did not exist, and was the basis for HVB paying management fees to Presidio in aid and abettance of Presidio's breach of fiduciary duties to Plaintiffs.

93.     As a direct and proximate cause of HVB's aid and abettance of Presidio's breach of fiduciary duty, as described herein, Plaintiffs suffered damages of $3,436,400, plus interest, costs and attorneys' fees.

94.     HVB's acts and omissions in aid and abettance of Presidio's breach of its fiduciary duties, as alleged herein, warrants the imposition of punitive damages.

### Fifth Claim for Relief:
### Breach of Contract and Breach of the Implied Duty of Good Faith and Fair Dealing

95.     Plaintiffs repeat and reallege each of the allegations set forth in the foregoing paragraphs as though incorporated fully herein.

96.     Plaintiffs entered into agreements with HVB in connection with the purported loan from HVB and the establishment of accounts at HVB in connection with the SIF investment program, including but not limited to Customer Agreement, Credit Agreement, Assignment and Assumption Agreement and ISDA Swap Agreement.

97.     Plaintiffs performed and satisfied all of the terms and conditions required to be performed on their parts in the respective agreements entered into by them with HVB in connection with SIF, including but limited to the Customer Agreement, Credit Agreement, Assignment and Assumption Agreement and ISDA Swap Agreement.

21

98.     HVB owed to Plaintiffs express and implied contractual duties of good faith and fair dealing and to perform all terms and conditions of all agreements, including the Customer Agreement, Credit Agreement, Assignment and Assumption Agreement and the ISDA Swap Agreement.

99.     HVB breached its express and implied duties of good faith and fair dealing and its contractual duties to make a real loan, in that it represented that the purported loans to Plaintiffs were real loans and charged Plaintiffs fees therefor, when the loans did not exist.

100.    HVB maintained Plaintiffs' accounts, which were managed under the discretion of HVB, in such a way as to conceal and for the purpose of concealing that the loan principal and premium referenced in the HVB Credit Agreement did not exist.  HVB owed a contractual duty to Plaintiffs arising out of the Customer Agreement, Credit Agreement and the ISDA Swap Agreement during the time that the accounts were open, which imposed a contractual duty upon HVB not to make any misrepresentations in any of said documents in any material respect.  This contractual duty was ongoing during the time that Plaintiffs' accounts remained open at HVB.

101.    HVB breached its express and implied contractual  duties to Plaintiffs by making withdrawals from Plaintiffs accounts at HVB to pay HVB and Presidio for a purported loan transaction and purported assets under management that HVB knew but concealed from Plaintiffs did not exist.

102.    HVB breached the express contractual terms and its implied duties of good faith and fair dealing with regard to Section 2.01 of the Credit Agreement by failing to fund a loan principal and premium, the combined amount of which was $189,200,000.

103.     HVB later purported to ratify its representations in the Credit Agreement by warranting in Section 7 of the Assignment Agreement that the Credit Agreement and related documents, including the Note, the Master Agreements and other assigned documents, would continue in full force and effect.  This purported ratification of the Credit Agreement in the Assignment Agreement was a breach of the contract, because the representations that it purported to ratify, namely that the loans existed, were false.

104.     HVB's breach of the implied and express terms of its agreement and its obligations under the terms of the Credit Agreement and Assignment and Assumption Agreement were ongoing during the time that these accounts remained open at HVB.

105.     As a direct and proximate cause of HVB's breach of contract and Breach of duty of good faith and fair dealing described herein, Plaintiffs suffered damages in the combined amount of $3,436,400, plus interest, costs and attorneys' fees.

106.     HVB's acts and omissions in breach of express contract and of the implied duties of good faith and fair dealing, as alleged herein, warrants the imposition of punitive damages.

### Sixth Claim for Relief: Fraudulent Concealment

107.     Plaintiffs repeat and reallege each of the allegations set forth in the foregoing paragraphs as though incorporated fully herein.

108.     HVB and Presidio conspired and agreed to conceal that the HVB loan and loan premium did not exist.  They made false representations to Plaintiffs of material fact in the Credit Agreement and Assignment and Assumption Agreement.  HVB and Presidio omitted to state material facts necessary in order to make the statements they made regarding the loan and management of assets, in light of the circumstances under which they were made, not misleading.

109.     HVB continued to conceal that the loans were shams by making false or misleading entries in the Plaintiffs account statements.  Based upon information and belief, the Plaintiffs accounts at HVB were open at HVB from September 30, 1999 until on or about May 15, 2000, after which they were closed by HVB in the exercise of HVB's discretionary authority and control over the accounts and pursuant to and in furtherance their conspiratorial agreement to fraudulently conceal the truth regarding the non-existent loans.  HVB directly and indirectly controlled Plaintiffs' investments in the Strategic Investment Fund and knew the fraudulent nature of the loan and management agreement, yet concealed these facts from Plaintiffs.

110.     HVB continued to conceal from Plaintiffs that the loan principal and premium did not exist by making false representations about the non-existent loans to Plaintiffs' accountants at KPMG and attorneys at Sidley Austin as late as May 2000.

111.     HVB is jointly and severally liable for all of the damages caused by the fraudulent concealment by HVB and Presidio.

112.     As a direct and proximate cause of HVB's fraudulent concealment described herein, Plaintiffs suffered damages in the combined amount of $3,436,400, plus interest, costs and attorneys' fees.

113.     HVB's acts and omissions to fraudulently conceal the truth about the non-existent loan and HVB and Presidio's lack of entitlement to receive payment for loan fees and management fees, warrants the imposition of punitive damages.

## VI.     PRAYER FOR RELIEF AND JURY DEMAND

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

A.  Plaintiffs be awarded all fees paid to HVB in the combined amount of $3,436,400, plus interest;

24

B.  Plaintiffs be awarded punitive damages in an amount to be determined at trial;

C.  Plaintiffs be awarded costs, expenses, and attorneys' fees incurred in connection with this action;

D.  Plaintiffs be awarded any such other and further relief as the Court finds just and proper.

## VII.   Demand for Jury trial

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury of all facts and issues triable by jury.

Dated: March  17 , 2011

Respectfully Submitted,

ISAACSON & WILSON, P.S.

Brian G. Isaacson
ISAACSON & WILSON, P.S.
1515 BROADWAY 11TH FLOOR
NEW YORK, NEW YORK 10036
Tel:    646-308-1600
Fax:    888-964-9449
Email: bgisaacson@isaacsonwilson.com

*Attorney for Plaintiffs*
*NY Registration # 4677274*

Edmundo O. Ramirez
ELLIS, KOENEKE & RAMIREZ, LLP
1101 CHICAGO AVENUE
MCALLEN, TEXAS  78501
Tel:    956-682-2440
Fax:    956-682-0820
Email: eor@ekrattorneys.com

# EXHIBIT A

# Arthur L. Cahoon, et al. v. HVB, et al.

| | (A) | (B) | (C) | (D) | (E) | (F) | (G) | (H) | (I) | (J) |
|---|---|---|---|---|---|---|---|---|---|---|
| | Individual Plaintiff's Name | Plaintiff's LLC | Strategic Investment Fund (SIF) | Collateral for Purported Loan Deposited by Plaintiffs into LLC Account | Stated Principal Amount of Proported HVB  Loan | Premium Amount of Purported HVB  Loan | Total Purported HVB Loan | Fraudulent Presidio Fees (275 BPS) | Fraudulent HVB Fees (209 BPS) | Damages (Total Fees Paid toHVB& Presidio) |
| a. | Cahoon, Arthur L. | Glengarriff Ventures, LLC | Washington SIF | 3,640,000 | 86,600,000 | 52,000,000 | 138,600,000 | 1,430,000 | 1,086,800 | 2,516,800 |
| b. | Sanchez, Jr., Antonio | Angelina Ventures, LLC | Thunderbolt SIF | 700,000 | 16,700,000 | 10,000,000 | 26,700,000 | 275,000 | 209,000 | 484,000 |
| c. | Geroge M. Sanchez Oil & Gas Trust | Medina Ventures, LLC | Thunderbolt SIF | 140,000 | 3,300,000 | 2,000,000 | 5,300,000 | 55,000 | 41,800 | 96,800 |
| d. | Sanchez Marital Trust | Red Ventures, LLC | Thunderbolt SIF | 350,000 | 8,300,000 | 5,000,000 | 13,300,000 | 137,500 | 104,500 | 242,000 |
| e. | Sanchez Spousal Trust | Pecos Ventures, LLC | Thunderbolt SIF | 140,000 | 3,300,000 | 2,000,000 | 5,300,000 | 55,000 | 41,800 | 96,800 |
| | | | | $  4,970,000 | $ 118,200,000 | $ 71,000,000 | $ 189,200,000 | $ 1,952,500 | $ 1,483,900 | $ 3,436,400 |