Mark W. Lerner (mlerner@kasowitz.com)
Mark P. Ressler (mressler@kasowitz.com)
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------x
ARTHUR L. CAHOON; GLENGARRIFF :
VENTURES, LLC; ANTONIO R. SANCHEZ, JR., :
individually and as Trustee of THE SANCHEZ :
SPOUSAL TRUST; ANGELINA VENTURES, LLC; :
THE GEORGE M. SANCHEZ OIL & GAS TRUST :
and ARS, JR., GMS NON-EXEMPT REMAINDER : **Case No. 11-cv-1891 (RMB)**
TRUST, KELSEY V. STEWART OIL & GAS TRUST, :
and RICHARD A. STEWART OIL & GAS TRUST, as : **ECF CASE**
beneficiaries of THE GEORGE M. SANCHEZ :
OIL & GAS TRUST; MEDINA VENTURES, LLC; : **HVB'S REPLY**
THE SANCHEZ MARITAL TRUST and ARS JR., : **MEMORANDUM OF LAW**
GMS NON-EXEMPT REMAINDER TRUST, : **IN FURTHER SUPPORT**
KELSEY L. STEWART OIL AND GAS TRUST : **OF ITS MOTION TO**
AND RICHARD A. STEWART OIL & GAS TRUST, : **DISMISS PLAINTIFFS'**
as beneficiaries of THE SANCHEZ MARITAL : **COMPLAINT**
TRUST; RED VENTURES, LLC; THE SANCHEZ :
SPOUSAL TRUST; and PECOS VENTURES, LLC, :
:
                    Plaintiffs, :
:
   - against - :
:
BAYERISCHE HYPO- UND VEREINSBANK AG; :
BAYERISCHE HYPO- UND VEREINSBANK :
AG – NEW YORK BRANCH; UNICREDIT :
U.S. FINANCE INC. and HVB RISK MANAGEMENT :
PRODUCTS, INC., :
:
                    Defendants. :
---------------------------------------------------------------------x

# TABLE OF CONTENTS

**Page**

ARGUMENT ............................................................................................................................. 1

I.  *AMERICAN PIPE* DOES NOT TOLL PLAINTIFFS' STATE LAW CLAIMS ............... 1

II. EVEN IF *AMERICAN PIPE* TOLLING APPLIES TO PLAINTIFFS' STATE LAW CLAIMS, IT DOES NOT APPLY TO SUCCESSIVE CLASS ACTIONS ............ 4

    A.  Class Certification in *Becnel* Was Denied Based on *All* Rule 23 Factors, Not Just Because Plaintiff Was Inadequate, So That Ruling Triggered Plaintiffs' Obligation to File Their Individual Suits ............................................... 4

    B.  *Kottler* Cannot Toll the Limitations Periods Because the Proposed Class in *Kottler* Had Been Effectively Rejected By the Decision in *Becnel* ........................ 6

III. PLAINTIFFS WERE ON INQUIRY NOTICE OF THEIR CLAIMS NO LATER THAN JANUARY 2005, SO THEIR CLAIMS ARE UNTIMELY .................................. 7

IV. THE CAHOON DECLARATION SHOULD BE STRICKEN: A DECLARATION THAT SETS FORTH NEW FACTS IS NOT APPROPRIATE FOR CONSIDERATION ON A MOTION TO DISMISS ................................................ 9

CONCLUSION .......................................................................................................................... 11

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*American Pipe Construction Co. v. Utah*,
   414 U.S. 538 (1974) .................................................................................................... passim

*Becnel v. KPMG, LLP*,
   229 F.R.D. 592 (W.D. Ark. 2005) ............................................................................... passim

*Cantor Fitzgerald Inc. v. Lutnick*,
   313 F.3d 704 (2d Cir. 2002) ................................................................................................ 2

*Crown, Cork & Seal Co. v. Parker*,
   462 U.S. 345 (1983) ............................................................................................................ 4

*Faulkner v. Beer*,
   463 F.3d 130 (2d Cir. 2006) .............................................................................................. 10

*Grimes v. Housing Auth.*,
   242 Conn. 236 (Conn. 1997) .............................................................................................. 3

*In re "Agent Orange" Prod. Liab. Litig.*,
   818 F.2d 210 (2d Cir. 1987) ................................................................................................ 1

*In re Fosamax Prods. Liab. Litig.*,
   694 F. Supp. 2d 253 (S.D.N.Y. 2010) ................................................................................ 2

*In re Initial Pub. Offering Sec. Litig.*,
   617 F. Supp. 2d 195 (S.D.N.Y. 2007) ................................................................................ 6

*In re Rezulin Prods. Liab. Litig.*,
   2006 U.S. Dist. LEXIS 11419 (S.D.N.Y. Mar. 15, 2006) ................................................... 1

*Korwek v. Hunt*,
   646 F. Supp. 953 (S.D.N.Y. 1986), *aff'd*, 827 F.2d 874 (2d Cir. 1987) ............................. 8

*Kottler v. Deutsche Bank AG et al.*,
   2010 U.S. Dist. LEXIS 30590 (S.D.N.Y. Mar. 29, 2010) ............................................ passim

*Kottler v. Deutsche Bank AG et al.*,
   607 F. Supp. 2d 447 (S.D.N.Y. 2009) ......................................................................... 5, 6, 7

*McCarthy v. Dun & Bradstreet Corp.*,
   482 F.3d 184 (2d Cir. 2007) .............................................................................................. 10

*McKowan Lowe & Co. v. Jasmine, Ltd.*,
   295 F.3d 380 (3d Cir. 2002) ................................................................................................ 4

*Primavera Familienstiftung v. Askin*,
   130 F. Supp. 2d 450 (S.D.N.Y. 2001)..................................................................................3

*Southwick Clothing LLC v. GFT (USA) Corp.*,
   2004 U.S. Dist. LEXIS 25336 (S.D.N.Y. Dec. 13, 2004) .......................................................10

*Volunteer Fire Ass'n of Tappan, Inc. v. County of Rockland, et al.*,
   2010 U.S. Dist. LEXIS 125394 (S.D.N.Y. Nov. 24, 2010)......................................................10

*Weiss v. La Suisse, Societe d'Assurances Sur La Vie*,
   381 F. Supp. 2d 334 (S.D.N.Y. 2005).................................................................................8

*Yang v. Odom*,
   392 F.3d 97 (3d Cir. 2004).............................................................................................4, 5

**OTHER AUTHORITIES**

Fed. R. Civ. P. Rule 23 .......................................................................................................4, 5, 6

Defendants Bayerische Hypo- und Vereinsbank AG; Bayerische Hypo- und Vereinsbank AG – New York Branch; UniCredit U.S. Finance, Inc.; and HVB Risk Management Products, Inc. (collectively, "HVB") respectfully submit this reply memorandum (the "Reply") in further support of their motion, pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure (the "Motion"), to dismiss the Complaint (the "Complaint") brought by the plaintiffs in this action, and in support of its motion to strike the Declaration of Arthur L. Cahoon ("Cahoon Declaration") submitted by plaintiffs in support of plaintiffs' Opposition to HVB's Motion to Dismiss the Complaint (the "Opposition").

## ARGUMENT

### I. *AMERICAN PIPE* DOES NOT TOLL PLAINTIFFS' STATE LAW CLAIMS

As discussed in the Motion, *American Pipe* and its progeny stand for the proposition that a class action would toll a *federal* statute of limitations on *federal* claims of all putative class members until class certification is denied. Even while carving out this exception, the Supreme Court restated the importance of statutes of limitations, which are designed "to prevent the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *American Pipe Construction Co. v. Utah*, 414 U.S. 538, 554 (1974). The principles set forth in *American Pipe*, however, do not hold that the pendency of a *federal* class action would toll *state* law claims. As one court in the Southern District of New York has noted, the "toll adopted in *American Pipe* was a toll of the *federal* statute of limitations on a *federal* claim by virtue of the institution of a *federal* class action." *In re Rezulin Prods. Liab. Litig.*, 2006 U.S. Dist. LEXIS 11419 at *2 (S.D.N.Y. Mar. 15, 2006) (emphasis supplied); *see also In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 210, 213 (2d Cir. 1987) (stating that the "limitation periods of *American Pipe* and *Crown, Cork* were derived from

federal statutes. Here, we are dealing with [state] limitation statutes. Because none of them provides for tolling in a situation such as exists here, it is doubtful that either *American Pipe* or *Crown, Cork* can be treated as applicable precedent").

As discussed in the Motion at 6-7*,* a federal court sitting in New York and presiding over a diversity action involving state law claims must apply New York's "borrowing statute" to determine whether the relevant state laws would permit tolling under *American Pipe*. *See, e.g. Cantor Fitzgerald Inc. v. Lutnick*, 313 F.3d 704, 709-10 (2d Cir. 2002). First, the court must determine whether the states at issue have adopted *American Pipe* tolling at all. Furthermore, even if a state has adopted *American Pipe*, the federal court must determine whether that state would allow application of *American Pipe* tolling on a cross-jurisdictional basis, *i.e.*, to situations where the class action was pending in a jurisdiction outside their state or to state law claims raised in federal actions in their state. *See, e.g., In re Fosamax Prods. Liab. Litig.*, 694 F. Supp. 2d 253, 257 (S.D.N.Y. 2010). Courts generally have been disinclined to import cross-jurisdictional tolling into the law of a state that has not ruled on the issue, especially because many courts that have adopted *American Pipe* tolling of state law claims have not expanded the doctrine to apply on a cross-jurisdictional basis. *Id*.

As discussed in the Motion at 15, and as plaintiffs implicitly acknowledge in the Opposition at 21, the class actions on which plaintiffs' tolling theory rests were pending in jurisdictions outside of those involved in the instant action. Therefore, in order to take advantage of *American Pipe* tolling, plaintiffs must (1) establish that the state jurisdictions involved in this case, New York, Florida and Texas, have adopted *American Pipe* tolling *and* (2) further establish that these states have also adopted *American Pipe* tolling on a cross-jurisdictional basis.

2

Despite this fact, plaintiffs spend a mere two paragraphs of the Opposition addressing the issue at all.  Opposition at 21.  Rather than attempt to provide support that the state jurisdictions whose law controls the issue of tolling allow both *American Pipe* tolling and cross-jurisdictional tolling, plaintiffs merely cite to *Primavera Familienstiftung v. Askin*, 130 F. Supp. 2d 450 (S.D.N.Y. 2001) remarking that cross-jurisdictional tolling was permitted in that case.  Opposition at 21.  The actual issue before the court in *Primavera*, however, was whether the law of Connecticut, which was the controlling state law in that case, would have tolled the Connecticut statutes of limitation applicable to the plaintiff in that action.  *Primavera*, 130 F. Supp. 2d at 516.  The court allowed tolling because it found that the Connecticut Supreme Court, which had expressly adopted *American Pipe* tolling, would also likely permit such tolling on a cross-jurisdictional basis.  *Id.* at 514-15; *see also Grimes v. Housing Auth.*, 242 Conn. 236, 242-243 (Conn. 1997) (the court held "we now adopt the rule set forth in *American Pipe & Construction Co.* with respect to the tolling of statute of limitations for the purported members of a class action").  The court in *Primavera* makes no determination whatsoever about what the laws of New York, Texas or Florida would do.[1]

As discussed in the Motion at 14-18, the highest courts of New York, Texas and Florida (unlike Connecticut) have not expressly adopted *American Pipe* tolling, much less allowed *American Pipe* tolling to apply on a cross-jurisdictional basis.  Plaintiffs have not, and cannot, cite to any law to the contrary.  As a result of plaintiffs' failure to demonstrate that neither New York, Texas nor Florida even applies *American Pipe* tolling, the court need not address the issue

---

[1] The principle cited by plaintiffs that "there are counter-balancing federal interests that should be considered where all of the litigation involved is occurring in the federal forum" was used by the court in *Primavera* to determine whether Connecticut, a state which had expressly adopted *American Pipe* tolling, would have allowed such tolling on a cross-jurisdictional basis.  Opposition at 21.  In finding that it would, the court noted that it could find no "interest on the part of Connecticut in having tolling barred in the circumstances present here."  The court in *Primavera* performs no such analysis for New York, Texas or Florida.  *Primavera*, 130 F. Supp. 2d at 516.

3

of cross-jurisdictional tolling. However, assuming, *arguendo*, that New York, Texas and Florida had adopted *American Pipe* tolling, plaintiffs have likewise failed to provide any support that those states would permit such tolling on a cross-jurisdictional basis.

> II. **EVEN IF *AMERICAN PIPE* TOLLING APPLIES TO PLAINTIFFS' STATE LAW CLAIMS, IT DOES NOT APPLY TO SUCCESSIVE CLASS ACTIONS**

Even if *American Pipe* tolling applied to plaintiffs' claims, such tolling would only apply to the *Becnel* action, and would not extend to the *Kottler* action. Under *American Pipe,* the statute of limitations is tolled until certification is denied. *See Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 353-354 (1983) (statute of limitations tolled for members of putative class from commencement of class action and "[o]nce the statute of limitations has been tolled, it remains tolled for all members of the putative class *until class certification is denied*") (emphasis supplied). Plaintiffs argue that *American Pipe* tolling should apply to successive class actions. This argument fails.

> A. **Class Certification in *Becnel* Was Denied Based on *All* Rule 23 Factors, Not Just Because Plaintiff Was Inadequate, So That Ruling Triggered Plaintiffs' Obligation to File Their Individual Suits**

Plaintiffs cite *Yang v. Odom*, 392 F.3d 97 (3d Cir. 2004) (cert denied, 544 U.S. 1048) and *McKowan Lowe & Co. v. Jasmine, Ltd.*, 295 F.3d 380 (3d Cir. 2002), for the proposition that the filing of a class action tolls the statute of limitations for a subsequent class action when the initial denial of class certification is unrelated to the appropriateness of the underlying claims for class treatment, and allows tolling of limitations periods for "subsequently filed class actions where the *sole basis* for the earlier denial of certification was the deficiency of the lead plaintiffs as class representative." *See Yang*, 392 F.3d at 105. Such principles have no application here, where class certification was definitively denied in *Becnel* on the merits of *all of the Rule 23*

4

*factors*, and not just because the lead plaintiff was a deficient class representative.[2]  *See Becnel v. KPMG, LLP*, 229 F.R.D. 592, 598 (W.D. Ark. 2005) (holding that "[p]laintiffs have failed to satisfy the prerequisites of 23(a) and failed to demonstrate that this action should be maintained under 23(b)").  Indeed, the *Becnel* court found that the <u>numerosity</u> requirement of Rule 23(a)(1) was <u>not met</u> (*Id.* at 596); the <u>commonality</u> requirement of Rule 23(a)(2) was <u>not met</u> (*Id.*); the <u>typicality</u> requirement of Rule 23(a)(3) was <u>not met</u> (*Id.* at 596-97); and the <u>adequacy</u> requirement of Rule 23(a)(4) was <u>not met</u> (*Id.* at 597).  Furthermore, the *Becnel* court also found that the action was not maintainable under Rule 23(b)(3) because plaintiffs <u>failed to demonstrate that the predominance and superiority requirements were met</u>. *Id.* at 597-98.  Given these holdings, *Yang* and *McKowan*'s holding that, "*American Pipe* tolling *will not apply* to sequential class actions where the earlier denial of certification was based on a Rule 23 defect in the class itself," is the applicable and controlling point of law.  *Yang*, 392 F.3d at 104.

Plaintiffs' argument that a successive class action brought after *Becnel* should toll the statutes of limitation fails for the same reasons.  The thrust of plaintiffs' argument is "class certification was denied in *Becnel* based on deficiencies of the lead plaintiff as a class representative rather than deficiencies of the class itself."  Opposition at 22.  This is totally false – the court in *Becnel* denied class certification because plaintiffs failed to satisfy *any* of the Rule 23 factors.  As such, plaintiffs' argument that "a definitive determination on the class itself was not reached until the subsequent *Kottler* decision" is incorrect and misleading.  Opposition at 23.

---

[2] Plaintiffs also claim that "class certification was denied in *Becnel* . . . because the lead plaintiff did not have standing to file a class action lawsuit against HVB." Opposition at 17.  However, the *Becnel* decision did not discuss the issue of standing at all.  Further, although plaintiffs claim in their Opposition at 17 that "in contrast to the lead plaintiff in *Becnel*, the lead plaintiff in *Kottler* did transact business with HVB," that assertion is also incorrect.  The lead plaintiffs in *Kottler*, like the lead plaintiff in *Becnel*, did not transact business with HVB.  *Kottler v. Deutsche Bank AG, et al.*, 607 F. Supp. 2d 447, 468 (S.D.N.Y. 2009).

5

### B.   *Kottler* Cannot Toll the Limitations Periods Because the Proposed Class in *Kottler* Had Been Effectively Rejected By the Decision in *Becnel*

Although plaintiff argues that the putative class in *Kottler* was a potentially proper subclass of the proposed class in *Becnel,* they are wrong. In *Becnel*, plaintiffs sought certification of a class of persons or entities that invested in the OPIS or BLIPS tax shelters between January 1, 1998 and December 31, 2000. Opposition at 20; *Becnel*, 229 F.R.D. at 595. The proposed class in *Kottler* was defined similarly: a class of all persons who entered into OPIS or BLIPS transactions in which KPMG and/or Brown & Wood issued opinion letters. Opposition at 20; *Kottler v. Deutsche Bank AG, et al.*, 607 F. Supp. 2d 447, 453 (S.D.N.Y. 2009); *Kottler v. Deutsche Bank AG*, 2010 U.S. Dist. LEXIS 30590 (S.D.N.Y. Mar. 29, 2010)). This was essentially the same class as in *Becnel,* where "the plaintiffs generally allege that in each transaction, KPMG acted as the seller of either [] OPIS or BLIPS . . . and that Sidley Austin Brown & Wood . . . provided . . . an opinion letter." *Becnel v. KPMG LLP*, 229 F.R.D. at 595. Plaintiffs fail to show how this "subclass" could have been proper and why it was not rejected in *Becnel,* given that the district court in *Becnel* found the class failed to meet *all* of the requirements of Rule 23.

Plaintiffs cite to *In re Initial Pub. Offering Sec. Litig.*, 617 F. Supp. 2d 195 (S.D.N.Y. 2007) for the proposition that "where a court decertifies a class action on narrow grounds such as, for example, that the class is too broad but indicates that with a narrower class the action could proceed, it may be reasonable for a putative member of the narrower class to continue to rely on the class action" for tolling purposes. Opposition at 19-20. However, there is no indication in the *Becnel* decision that the district court might have certified a class defined more narrowly – as noted, *supra*, the court in *Becnel* denied certification on all possible grounds. Indeed, the court in *Kottler* ultimately found that the predominance requirement was not met

6

because "individualized proof would predominate at trial" and "BLIPS clients entered into the transaction for individualized reasons." *Kottler*, 2010 U.S. Dist. LEXIS 30590 at *11. Thus, not only was the putative class in *Kottler* not a potentially proper subclass of the proposed class in *Becnel*, but there could never *be* a potentially proper subclass of the proposed class in *Becnel* given the fact that issues of individualized proof would predominate at trial, as the opinion in *Kottler* explains. Further, plaintiffs have failed to allege facts or make a sensible argument that the class that sought to be certified in *Kottler* was a potentially proper subclass and not just an attempt to relitigate the same class issues in a different forum.

### III. PLAINTIFFS WERE ON INQUIRY NOTICE OF THEIR CLAIMS NO LATER THAN JANUARY 2005, SO THEIR CLAIMS ARE UNTIMELY

There were numerous events after the plaintiffs entered the BLIPS transaction that should have made them aware of any potential claims against HVB. Motion at 10-12. What is clear from the facts as alleged in the Complaint and the applicable law, however, is that all plaintiffs were on inquiry notice of their claims no later than January 2005, when the *Becnel* class action (Complaint ¶ 42) was filed.[3] The plaintiffs in that case claimed civil fraud and other causes of action against HVB based on the same transaction. *Becnel* resulted in a reported decision denying class certification in August 2005. *Becnel v. KPMG, LLP*, 229 F.R.D. 592 (W.D. Ark. 2005). And in September 2005, the *Kottler* class action was filed (Complaint ¶ 43) – based on the same transaction. The *Kottler* action also resulted in reported and unreported decisions. *Kottler v. Deutsche Bank AG, et al.,* 607 F. Supp. 2d 447 (S.D.N.Y. 2009) and *Kottler v. Deutsche Bank AG, et al.*, 2010 U.S. Dist. LEXIS 30590 (S.D.N.Y. March 29, 2010). Indeed, "[i]t is well settled that the filing of a lawsuit by private parties puts plaintiffs with identical

---

[3] Defendants reserve the right to argue earlier dates of notice after discovery and upon motion for summary judgment, if those events occur.

7

claims on notice of their potential claims." *Weiss v. La Suisse, Societe d'Assurances Sur La Vie*, 381 F. Supp. 2d 334, 339 (S.D.N.Y. 2005); *see also Korwek v. Hunt,* 646 F. Supp. 953, 958-959 (S.D.N.Y. 1986), *aff'd*, 827 F.2d 874 (2d Cir. 1987) (filing of lawsuits by private parties asserting same conspiracy against some of the same defendants puts plaintiff on notice).[4]

Plaintiffs were aware of their potential claims once *Becnel* was filed in January of 2005. As discussed, *supra*, plaintiffs cannot take advantage of *American Pipe* tolling in this matter. Therefore, the Cahoon Plaintiffs' claims expired as follows:[5]

| Claim | Relevant State Law/ Statute of Limitations Period | Latest Accrual Date Based on Pleadings | Expiration Date |
|---|---|---|---|
| Fraud-based claims (fraud, aiding and abetting fraud, and fraudulent concealment) | In Florida, fraud claims must be brought within four years from the time the respective facts giving rise to the respective causes of action were discovered or should have been discovered with the use of due diligence. | January 2005 (filing of *Becnel*) | January 2009 |
| Conspiracy to commit fraud | In Florida, four years from the occurrence of the last element constituting the cause of action: agreement to illegal purpose, overt acts, and injury. | August 2000, when the loan is alleged to not have been made. | August 2004 |
| Breach of fiduciary duty & aiding and abetting breach of fiduciary duty | In Florida, four years from the occurrence of the last element constituting the cause of action: the existence of a fiduciary duty and a breach of that duty that is the proximate cause of plaintiffs' damages. | August 2000, when the loan is alleged to not have been made. | August 2004 |
| Breach of contract and implied duty of good faith and fair dealing | Under Florida law the claims expire five years from when the last element constituting the cause of action occurs: a valid contract, a material breach; and damages. | August 2000, when the loan is alleged to not have been made. | August 2005 |

---

[4] *See also Becnel*, 229 F.R.D. at 598 ("[a]pproximately seventeen (17) lawsuits were filed, beginning in December 2002, which arose from OPIS/BLIPS transactions prior to the filing of this lawsuit in January 2005. Some 144 OPIS and/or BLIPS opinions are currently involved in litigation or have reached a settlement.")

[5] For the discussion of which states' statutes of limitation apply to each of plaintiffs' claims, *see* Motion at 20-23.

8

The Sanchez Plaintiffs' claims expired as follows:

| Claim | Relevant State Law/ Statute of Limitations Period | Accrual Date | Expiration Date |
|---|---|---|---|
| Fraud-based claims (fraud, conspiracy to commit fraud, aiding and abetting fraud, and fraudulent concealment) | In New York, the limitations period is the longer period of (1) six years from the commission of the alleged fraud, or (2) two years from when the plaintiff, with reasonable diligence, discovered, or could have discovered, the alleged fraud | January 2005 (filing of *Becnel*) | January 2007 |
| Breach of fiduciary duty & aiding and abetting breach of fiduciary duty | In New York, breach of fiduciary duty and aiding and abetting breach of fiduciary duty have the same statute of limitations as fraud. | January 2005 (filing of *Becnel*) | January 2007 |
| Breach of contract and implied duty of good faith and fair dealing | In New York, the limitations period for a cause of action for breach of contract is six years, and accrues at the time of the breach. | October 1999, when the loan is alleged to not have been made. | October 2005 |

Furthermore, even if this Court finds that *American Pipe* tolling is applicable in this case, which it is not, as explained above, *supra*, plaintiffs cannot claim tolling by both the *Becnel* action and the *Kottler* action.  As a result, if the Court found that New York, Texas and Florida all have adopted American Pipe tolling *and* have all decided to apply it on a cross-jurisdictional basis, which they have not, *the Court should only toll the statutes of limitation during the pendency of the* Becnel *class action  -- which would add a mere seven months to the expiration of the limitations periods set forth in the above charts* (except it would add nothing to Cahoon's conspiracy and breach of fiduciary duty claims because they expired pre-*Becnel*).

### IV.  THE CAHOON DECLARATION SHOULD BE STRICKEN: A DECLARATION THAT SETS FORTH NEW FACTS IS NOT APPROPRIATE FOR CONSIDERATION ON A MOTION TO DISMISS

In support of the Opposition, plaintiffs submitted the Cahoon Declaration, which contains 34 paragraphs of facts that the declarant Arthur Cahoon ("Cahoon") contends are relevant to the

9

plaintiffs' claims, as well as to the underlying transaction. However, the vast majority of these facts are either not alleged in the Complaint[6] or explicitly contradict assertions made in the Complaint.[7]

Plaintiffs' attempt to submit new facts and theories of the case should be disregarded, and the Cahoon Declaration should be stricken because in adjudicating a motion to dismiss, a court's review is generally "limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007); *accord Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). Furthermore, courts within this district have held that "it is well-settled . . . that 'a complaint cannot be amended merely by raising new facts and theories in plaintiffs' opposition papers' . . . and a court must 'disregard any portions of [a] declaration which set forth new facts, beyond the scope of the complaint, or legal arguments, both of which are not appropriate for consideration on a motion to dismiss." *Volunteer Fire Ass'n of Tappan, Inc. v. County of Rockland, et al.*, 2010 U.S. Dist. LEXIS 125394 at *14-15 (S.D.N.Y. Nov. 24, 2010); *see also Southwick Clothing LLC v. GFT (USA) Corp.*, 2004 U.S. Dist. LEXIS 25336 at *20 (S.D.N.Y. Dec. 13, 2004) ("A complaint cannot be amended merely by raising new facts and theories in plaintiffs' opposition papers, and hence such new allegations and claims should not be considered in resolving the motion.")

---

[6] For example, ¶¶ 18, 23, 27, 28 and 31 of the Cahoon Declaration introduce facts (which do not appear in the Complaint) related to plaintiffs' theory that one component of the transaction, an interest rate swap, is critical to the transaction's failure and, as a result, the basis for plaintiffs' claims. Additionally, in ¶¶ 20-27, 32 and 33 of the Cahoon Declaration, Cahoon provides specific facts concerning his counsel's alleged diligence in his attempt to discover any claims Cahoon may have had in connection with the BLIPS transaction prior to 2010. These are also facts that are not included in the Complaint.

[7] For example, in ¶¶ 2-7, Cahoon states that he entered into the BLIPS transaction at issue in this case because he was told it was, "a great tax shelter for me and might even make a profit." Cahoon Declaration at ¶ 6. However, in the Complaint, plaintiffs assert that BLIPS, which they call SIF in the Complaint, "was marketed and represented to Plaintiffs by Presidio. . . as a series of funds, each fund consisting of an investment pool, which 'seeks to provide investors with a high total return.'" Complaint ¶ 5.

**CONCLUSION**

For the reasons set forth above and in HVB's Motion, plaintiffs' Complaint should be dismissed in its entirety and its motion to strike the Cahoon Declaration should be granted.

Dated: New York, New York
August 4, 2011

Respectfully submitted,

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

By: /s/ Mark W. Lerner
Mark W. Lerner
(mlerner@kasowitz.com)
Mark P. Ressler
(mressler@kasowitz.com)
James E. D'Elicio
(jdelicio@kasowitz.com)
Kathryn S. Bevilacqua
(kbevilacqua@kasowitz.com)

*Attorneys for Defendants*

11